UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CHARLES E.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:21cv315 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2024. (Exhibit 2D).

2. The claimant has not engaged in substantial gainful activity since August 26, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.). (Exhibit 8D, 9D).

3. The claimant has the following severe impairments: status post bilateral shoulder surgeries; degenerative disc disease of the lumbar spine and status post removal of hardware from prior fusion at L5-S1; asthma; obesity; and, lupus (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can frequently climb stairs or ramps, balance, stoop, kneel, crouch, and can never climb ladders, ropes, scaffolds, or crawl. The claimant must avoid concentrated exposure to fumes, dusts, odors, gases, and poor ventilation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 14, 1966 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 26, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-24).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits,

leading to the present appeal.

Plaintiff filed her opening brief on February 15, 2022. On March 28, 2022 the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff was born in July 1966; he reached age 50 in July 2016 and age 55 in July 2021 (Tr. 148-54). He has a 12th-grade education, and he has worked since 1989 as a machinist, at times running a CNC lathe and performing tasks sometimes requiring him to lift up to 100 pounds (Tr. 176-77). From 2005-2018, Plaintiff posted an annual salary of between $29,000 and

$42,000 every year until he became disabled and could no longer work (Tr. 171). Plaintiff noted in one report that he stopped working on August 26, 2019, due to the combined effects of multiple disabling conditions including lupus and osteoarthritis with osteopenia (Tr. 175-76), but the record shows his statement in the report was a significant understatement of his medical situation.

Plaintiff has undergone at least nine orthopedic surgical procedures in the past 20 years. He had a cervical fusion in September 2003, a lumbar interbody fusion at L5-S1 in April 2007; a laminectomy, a left wrist arthrodesis on September 1, 2017, decompression, and fusion at L4-L5 in December 2018, a left total shoulder arthroplasty in May 2019, a right total shoulder arthroplasty in October 2019, a right thumb LRT with FCR tendon transfer and right wrist partial trapezoid excision with interpositional grafting in January 2020, and an instrumentation, fusion, and decompression of the lumbar spine in July 2020. He has also undergone bilateral L2 and L3 medial branch radiofrequency neurotomy in June 2014 and November 10, 2016.

The record shows that Plaintiff has a complicated medical history and multiple chronic medical conditions including lupus and antiphospholipid antibody syndrome, arthritis, hypertension, bilateral hip osteoarthritis; osteoarthritis of the hands; reactive airflow disease and lung surgery for empyema; major depressive disorder and anxiety disorder, a history of MRSA infection, and gastroesophageal reflux disease (GERD) (Tr. 1038). He has been prescribed numerous strong medications including methotrexate, hydroxychloroquine, Hysingla, gabapentin, prednisone, buspirone, Lexapro, Cymbalta, Zantac, Dexilant, lisinopril, ProAir inhaler, and Allegra (Tr. 1039, 1118-20). Plaintiff asserts that his pain, treatments, medications, side effects, fatigue, worsening depression and anxiety, and overall deteriorating health have caused symptoms

and limitations that are well-documented and prevent him from working.

Plaintiff submitted written descriptions of his medical conditions, the resulting symptoms, and the effect on his daily life. In an October 13, 2019 disability report, Plaintiff stated that he was no longer able to do yard work because it caused pain in his back, arms, and legs (Tr. 194). On a checklist portion of the form, Plaintiff noted difficulties with lifting, squatting, bending, standing, reaching, walking, stair climbing, and using his hands (Tr. 198). He explained that he could walk about four blocks before he needed to stop and rest, and he would need 15 minutes to recover before he could resume activity (Tr. 198). Plaintiff reported wearing a wrist splint about once per week (Tr. 200). In the "Remarks" section, Plaintiff explained that "any repetitive work affects wrist, joints, etc. causing pain/swelling . . . have had multiple joints replaced, can't stand for any length of time" (Tr. 202). His wife filled out the form for him (Tr. 202).

The administrative hearing (lasting 48 minutes) was held over the phone on January 4, 2021 (Tr. 31-32). The ALJ conducted the hearing from her "alternative duty location," while the other participants were at various other locations (Tr. 31-32).

Plaintiff testified that he last worked on August 26, 2019 (Tr. 35). He worked at the same job throughout his career, and he performed similar but progressively complex and higher-ranking duties until his upper extremities failed and required surgery in 2016 (Tr. 35-38). Plaintiff agreed when the ALJ characterized his various surgeries as "successful" (Tr. 41). However, he also testified to ongoing limitations in his shoulders (reaching) (Tr. 41); difficulty bending his wrists (Tr. 45); and limitations in his hands and fingers (manipulation and grasping) (Tr. 44). He testified that the numerous surgeries were somewhat helpful, but he still had symptoms (Tr. 46-47).

Plaintiff also explained that prolonged or sustained usage/activity was a primary factor aggravating his symptoms. He frequently needed to rest or change positions (Tr. 46-48). Even sitting for too long at one time increased his pain (Tr. 46-47). Likewise, his shoulder symptoms were aggravated by using his arms (Tr. 50). Plaintiff explained that due to the metal plate in his left (dominant) wrist, with repeated use, he tended to lose his grip and drop things (Tr. 50). Plaintiff also had a metal plate in his neck that limited his range of motion and caused symptoms when he moved wrong (Tr. 48). However, he had difficulty carrying things after doctors removed the "hardware" from his back (Tr. 46-48). Medications also aggravated his symptoms and limitations. For example, the medication he took for lupus caused tremors in his hands which exacerbated his difficulty with fine manipulation (Tr. 42). He noted that despite multiple surgical interventions, undergoing injections in his hips (and in other joints), and participating in physical therapy (Tr. 43), he continued to have symptoms including chronic headaches from nerve damage in his neck (Tr. 47-48). His doctors had recently advised that he might need more surgery - hip replacement and/or others to address widespread arthritic degeneration and previous hardware placement (Tr. 43).

Plaintiff testified that he experienced anxiety, but he thought it was somewhat controlled with medication and he did not consider anxiety a "mental health" issue (Tr. 40). He explained that his physical symptoms caused him to worry because he did not want to "fall to hurt something else. That's my biggest fear." (Tr. 50). The "worry" was distracting and caused him to lose focus on tasks to the point his ability to concentrate was "out the window" (Tr. 46, 50).

In support of remand, Plaintiff argues that the ALJ erred in evaluating his symptoms, limitations, and RFC. The ALJ determined that Plaintiff's severe impairments included "status

7

post bilateral shoulder surgeries; degenerative disc disease of the lumbar spine and status post removal of hardware from prior fusion at L5-S1; asthma; obesity; and, lupus" and his non-severe medical conditions included the residual effects of the surgeries on his bilateral wrists, hip pain, and anxiety (Tr. 17-19). Despite these severe and non-severe impairments, the ALJ held that Plaintiff had the RFC to perform the demands of light exertional level work except he could only "frequently climb stairs or ramps, balance, stoop, kneel, crouch; [could] never climb ladders, ropes, scaffolds, or crawl; must avoid concentrated exposure to fumes, dust, odors, gases, and poor ventilation" (Tr. 20). Light work requires frequent lifting or carrying of objects weighing up to 10 pounds and occasional lifting up to 20 pounds. 20 C.F.R. § 404.1567. A light job typically involves walking or standing six hours per day, pushing or pulling arm or leg controls if performed sitting, or working at a production rate if lifting is negligible. Grasping, holding, and turning objects is required. POMS DI 25001.001.

For the first step of the symptom evaluation analysis, the ALJ found, "[T]he claimant does have underlying medically determinable impairments that could reasonably cause some symptomatology." (Tr. 20). Then, in the second step of the analysis, the ALJ explained that "the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration, or severity as to reduce the claimant's Residual Functional Capacity, as set forth above, or to preclude all work activity on a continuing and regular basis." (Tr. 20). The ALJ concluded, "In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity and degree of functional limitations alleged by the claimant." (Tr. 20).

The decision includes very few reasons supporting the ALJ's discounting of Plaintiff's

8

description of his symptoms and limitations and even fewer reasons supporting the limitations included in (or excluded from) the RFC finding. The ALJ's decision presents a disjointed, skeletal, and inaccurate summary of the evidence, and the analysis consists of often irrelevant and illogical sound bites that do little to explain Plaintiff's symptoms and resulting functional limitations. Instead of focusing on any particular symptom or functional limitation, the decision vacillates between evidence relating to various conditions without explaining how the evidence fits together or what it shows. For example, after acknowledging Plaintiff has "several severe physical impairments," the decision appears to focus on Plaintiff's shoulder impairments, but then mentions his back, then his wrists, then cites a couple of times his doctors noted normal findings, and then concludes "the claimant is not more limited than accommodated by the residual functional capacity (RFC)" (Tr. 21). As Plaintiff points out, nothing in the summary paragraph logically leads to the conclusion asserted.

     In another instance, the decision appears to move toward discussing Plaintiff's shoulder impairments (Tr. 21). Incorrectly, the decision states that Plaintiff "underwent bilateral shoulder surgery in early 2019" and that he improved sufficiently after surgery to successfully return to work before his alleged onset date (Tr. 20, 521). However, the record shows Plaintiff had surgery on his left shoulder in May 2019 and on his right in October 2019. These dates are not "early 2019" and do not fit the ALJ's narrative of Plaintiff recovering prior to his "alleged" onset of disability. In fact, after the May 2019 left total shoulder arthroplasty, Plaintiff underwent physical therapy, but he was not able to meet his long-term goal of returning to work and managing his symptoms (Tr. 683). In September 2019, he still had marked stiffness of his left shoulder joint and severely limited active and passive range of motion in his right shoulder (Tr. 277). In

9

October 2019, he underwent a right total shoulder arthroplasty, and again, he underwent physical therapy (Tr. 344, 566). Again, his long-term goals of improving function of the right upper extremity were not met (Tr. 540, 623).

Additionally, the decision incorrectly and confusingly suggests injections were sufficient to cure Plaintiff shoulder impairments ("injection did reduce his pain and increase his range of motion") without reconciling that observation with his need for surgery only months later and notations in treatment records that he "failed conservative treatment" (Tr. 344, 566). The analysis of Plaintiff's shoulders is further confused by the intermittent insertion of "facts" relating to other conditions or areas of the body as counterpoints to Plaintiff's symptoms and limitations (Tr. 21). The confusing and factually inaccurate statements followed by the abrupt and unexplained assertions that Plaintiff had no limitations beyond those predetermined in the RFC findings does not create the required logical bridge. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017) ("An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion.").

The ALJ may not insist that the objective evidence "substantiate" a claimant's symptoms or that the limitations be supported by more than a preponderance of the evidence as a prerequisite to a finding of disability. SSR 16-3p. The Seventh Circuit Court of Appeals and the District Courts in this Circuit have often commented that "the whole point of the credibility determination is to determine whether the claimant's allegations are credible despite the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014). As the Seventh Circuit has observed, it is illogical to dismiss a claimant's symptoms because they are not directly corroborated by objective evidence,

10

and a patient's complaints of physical pain often cannot be explained through diagnostics. *See, e.g., Aurand*, 654 Fed. App'x at 837; *McClinton v. Astrue*, 2012 WL 401030, at *11 (N.D. Ill. Feb. 6, 2012). Here, however, the ALJ discounted Plaintiff's symptoms and limitations because "the record does not document sufficient objective medical evidence to substantiate the severity and degree of functional limitations alleged by the claimant." (Tr. 20).

In any event, in this case, the record is replete with objective evidence substantiating Plaintiff's symptoms and limitations. As noted above, Plaintiff has had three lumbar fusions, most recently in July 2020, and experienced only partial improvement (Tr. 935, 1095). He continued to have multiple symptoms including weakness, numbness of the right anterior/lateral thigh to the knee, paresthesias, muscle aches, muscle weakness, arthralgias/join pain, and back pain. Examinations revealed tingling/numbness in his right leg (Tr. 815, 819-20, 837). Altogether, Plaintiff has undergone nine orthopedic surgeries, has been diagnosed with lupus and antiphospholipid antibody syndrome, arthritis, hypertension, bilateral hip osteoarthritis; osteoarthritis of the hands; reactive airflow disease; major depressive disorder and anxiety disorder, and GERD (Tr. 1038). He has been prescribed numerous strong medications. (Tr. 1039, 1118-20). Exam reports show he is unable to climb a flight of stairs without shortness of breath; and he has right shoulder crepitus, joint tenderness, and painful reduced range of motion; reduced strength in his right upper extremity; and right-hand tenderness (Tr. 345-46). He also has tingling/numbness in his bilateral hands (Tr. 345).

Plaintiff's lupus and antiphospholipid antibody syndrome have been confirmed by testing showing low complements, elevated double-stranded DNA, and positive antiphospholipid antibodies (Tr. 273-96, 319, 1106, 1117).

Additionally, despite the ALJ's mistaken view of the evidence relating to Plaintiff's hip pain, X-rays of the hips showed moderate joint space narrowing, osteoarthritis, and marginal osteophytes (Tr. 282, 1131). The x-rays also revealed "labral chondrocalcinosis" and "calcification within symphysis pubis" (Tr. 282). Plaintiff received cortisone injections in September 2020 - a surgical procedure performed in the hospital (Tr. 1002-03, 1093-94). Records from Fort Wayne Orthopedics show that he is likely to need hip replacement (Tr. 1128).

As for his wrist and hand pain and limitations, September 2019 hand x-rays showed a surgical fusion and hardware in his left hand and carpal joint (Tr. 280). There was also evidence of mild degenerative joint disease, potentially a small erosion or cyst, and diffuse osteopenia (Tr. 280-81). On exam, he had a restricted range of motion in his left wrist due to plate placement (Tr. 278). X-rays of his right hand showed advanced degenerative joint disease (Tr. 280). X-rays taken in December 2019 showed right thumb carpometacarpal osteoarthritis and right wrist scaphotrapeziotrapezoid (STT) osteoarthritis (Tr. 301). He was diagnosed with primary osteoarthritis of the first carpometacarpal joint of the right hand and wrist, and right thumb LRTI was recommended (Tr. 729-32). In January 2020, he underwent right thumb LRTI with FCR tendon transfer and right wrist partial trapezoid excision with interpositional grafting (Tr. 755, 1044, 1050). He subsequently underwent occupational therapy (Tr. 1052, 1099). His doctor warned him that the surgery involved a lengthy recovery and no guarantees of success (Tr. 729-36, 765-70).

Plaintiff consistently had a BMI around 35 which likely exacerbated his symptoms (Tr. 277, 345, 510, 731, 996, 1018, 1118). And, the record also contains "objective" (and other) evidence of Plaintiff's psychiatric symptoms including reports that despite medication he "still has

12

little outbursts - feeling closeted, like people are out to get him" and clinical observations of an anxious affect (Tr. 1122). Simply treating his conditions caused him to have over 50 medical appointments in 2019 and nearly 25 through the end of October 2020. Even the state agency non-examining doctors opined that one or more of Plaintiff's medically determinable impairment(s) could reasonably be expected to produce the pain or other symptoms he described (pain and weakness) and that his statements about the "intensity, persistence, and functionally limiting effects of the symptoms" were substantiated by the objective medical evidence alone (Tr. 64, 77).

None of this objective and clinical evidence supports the ALJ's conclusion that Plaintiff is not any more limited than she determined. *See Terry v. Astrue*, 580 F.3d 471 (7th Cir. 2009) (error where ALJ mischaracterized evidence in evaluating credibility); *Roddy v. Astrue*, 705 F.3d 631, 637-38 (7th Cir. 2013) (reversing where ALJ "misunderstood or mischaracterized" objective evidence); *Steele*, 290 F.3d at 938, 940 (error where ALJ mischaracterized objective evidence); *see also, e.g., Charles B. v. Saul*, Case No. 18 C 1377, at *12 (N.D. Ill. Aug. 1, 2019) (ALJ erred, *inter alia*, in characterizing objective evidence as "mild").

Despite finding the record did not contain sufficient objective evidence to substantiate Plaintiff's symptoms and limitations, the ALJ did not doubt that he had medical conditions likely to cause his symptoms and that those conditions were established by objective medical evidence. (Tr. 20). Therefore, Plaintiff cleared the first step of the symptom evaluation analysis, and the next step required the ALJ to evaluate his symptoms and limitations based on all of the relevant evidence in the record and give "specific reasons for the weight given" to his symptoms that were "consistent with and supported by the evidence." SSR 16-3p ("adjudicators will focus on whether

13

the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities). As discussed above, the decision does not focus on any particular symptom or limitation, and instead takes a more global approach to evaluating whether Plaintiff is disabled. In taking such broad strokes, the decision fails to build the required logical bridge.

The decision in this case does not establish the required logical bridge between the evidence and the ALJ's findings about Plaintiff's ability to function (*i.e.*, his RFC). In place of the required logical analysis of the evidence, the decision merely lists reasons to disbelieve Plaintiff's pain and subjective symptoms, which is prohibited by SSR 16-3p. For example, the decision suggests Plaintiff's desire to return to work prior to the start of his disability is evidence weighing against his claim (Tr. 21). The ALJ is correct that Plaintiff wanted to return to work; in early August 2019, he told his doctor he wanted to return to work and asked the doctor to write a "release" so he could resume work activity (Tr. 424, 427). However, the desire to work and the ability to work are not the same thing. Later in August 2019, Plaintiff was forced to stop working due to his shoulder and other medical conditions (Tr. 538, 731, 740, 815, 824, 1046). Typically, the willingness to work despite significant impediments is evidence supporting a claim not detracting from it. *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). In fact, SSA's own policies encourages disabled people to attempt to return to the workforce. Additionally, the ALJ did not take into account a Plaintiff's exemplary work history and a "claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill*, 807 F.3d at 868. The fact that Plaintiff maintained stable employment for a number of years and

14

doggedly continued to try to work, even if unsuccessfully, weighs heavily in his favor.

The decision also cites "normal" or temporary improvements to support the ALJ's conclusion that Plaintiff was not as limited as he described. For example, the ALJ noted instances of Plaintiff having normal gait and being described as in no acute distress, but she did not say why an abnormal gait would be expected for person with Plaintiff's impairments or why it was remarkable he was not in acute distress at a typical doctor's office visit. The ALJ also failed to weigh the normal findings against the pain management doctor's ongoing treatment of Plaintiff with strong pain medications, extended physical therapy, and repeated surgeries and other invasive treatments. *See Lambert v. Berryhill*, No. 17-1627, at *13 (7th Cir. Jul. 19, 2018) (ALJ erred in relying on "normal" objective findings where tests showed no hardware malfunction, coordination issues, or strength deficits but physicians did not interpret "normal" medical findings as inconsistent with claimant's reports and continued to treat his pain); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (claimant unlikely to successfully fool physicians into prescribing powerful medications only to bolster claimant's application for Disability Insurance Benefits).

Further, the decision mischaracterizes the degree of improvement Plaintiff obtained from treatment and the longevity of the benefits he enjoyed (Tr. 21). For example, although the decision acknowledges Plaintiff continued to have symptoms including "right shoulder popping, locking, grinding, and catching," the decision dismisses the significance of his symptoms because he supposedly had normal "strength, gait, and grip" and did not need an assistive device - although the decision does not explain what type of device the ALJ expected Plaintiff to use for his shoulder impairment (Tr. 21). The decision also calls Plaintiff's experience in physical therapy

15

"adequate" despite the fact he did not reach his rehabilitation goals and continued to require narcotic pain medication and additional surgeries (Tr. 344, 566, 540, 623, 683). The decision makes unsupported conclusions such as, except for having surgery on both of his upper extremities in a six-month period, Plaintiff's "hands and arms were not otherwise impaired" (Tr. 21). The ALJ also noted that Plaintiff had no "joint pain or mobility limitation" except for his "reports of back pain" but this statement ignores the severity of Plaiintiff's back impairment (three fusions) and the hip impairment that was confirmed by x-rays.

It was improper for the ALJ to ignore evidence and "select only that evidence which supports [her] conclusion . . . the evidence supporting the decision must still be substantial when all the evidence is weighed." *McGee v. Bowen*, 647 F. Supp. 1238, 1246 (N.D. Ill. 1986); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion.); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.").

As a result of the ALJ engaging in a generalized credibility analysis and not conducting a functional analysis, the RFC is unsupported. The ALJ's decision failed to "build an accurate and logical bridge from the evidence to his conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents meaningful judicial review. *See Scott*, 297 F.3d at 595. Additionally, as the RFC analysis is erroneous, it follows that the ALJ's Step Five analysis is also erroneous. Thus, on remand, after crafting a fully supported RFC, the ALJ must then engage in a proper

16

analysis to determine if there are any jobs in the national economy that Plaintiff could perform.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.

Entered: May 18, 2022.

s/ William C.  Lee  
William C. Lee, Judge  
United States District Court